### Oscar Needham v. The State.

#### No. 4552.   Decided October 3, 1917.

#### Rehearing denied October 31, 1917.

**1.—Aggravated Assault—Evidence—Res Gestae.**

Upon trial of aggravated assault, the statements made by the injured party to others as to the assault upon 'her, some ten or fifteen minutes thereafter while she was still bleeding freely, etc., from the wound, was res gestae and admissible in evidence. Following Gillespie v. State, 190 S. W. Rep., 146.

**2.—Same—Argument of Counsel.**

Where the trial court promptly sustained an objection to the argument of State's counsel alluding to defendant's wife and daughter as "cattle," reprimanded the State's counsel, and withdrew the same orally by agreement from the jury, there was no reversible error.

**3.—Same—Bills of Exception.**

Where bills of exception were not approved by the trial judge, or in effect explained away, there was no reversible error.

**4.—Same—Motion for New Trial—Res Gestae.**

Where the conviction depended not only upon res gestae testimony but was corroborated by the physical facts, and other testimony, the conviction for aggravated assault is sustained.

Appeal from the County Court of Williamson. Tried below before the Hon. Richard Critz.

Appeal from a conviction of aggravated assault; penalty, a fine or twenty-five dollars and thirty days imprisonment in the county jail.

The opinion states the case.

*Dan Moody,* for appellant.—Cited cases in opinion.

*E. B. Hendricks,* Assistant Attorney General, for the State.

PRENDERGAST, Judge.—Appellant was convicted of an aggravated assault on his wife and a fine of $25 and thirty days in jail assessed as his punishment.

The testimony as a whole clearly shows that on the date alleged appellant's wife, Etta Needham, was sitting in the front of their restaurant crocheting. At the time she, her son Elma, and his wife, Fay Needham, were the only persons in the restaurant. Appellant then came in drunk or drinking. Mrs. Etta Needham swore she and he then "had a little trouble there that day." The testimony, without

question, further shows that prior to this "little trouble," she and appellant had, she had no bruises and cuts on her person, and that her clothes were in no way torn. That after it was over, as sworn to by Mr. Allen, a disinterested witness, who then saw her, "she had a big swollen place on her arm, and her nose was swollen and scratched and bruised and she had blood on her hands and clothing." The whole evidence excludes the idea that any other than appellant produced these injuries of her person and clothing.

She further swore that when appellant took her crochet away from her she asked her son Elma to make him give it back, and Elma told him to hand it over to her, and he did so. "Mr. Needham caught a hold of me while I was still sitting down in the chair." She said she did not remember how he caught her or whether he then hurt her; and that after it was over, "I was scratched on my right hand and on my nose. Yes, there was some bruises just above my wrist; the belt of my dress was torn. The place on my nose bled some . . . enough to stain a handkerchief a right smart. . . . It was almost covered. I had on an apron with a bib on it up over my breast. I think the bib had blood on it." Recalled by the State, she testified: "After Oscar Needham tore my dress I hit him with a knife. I did not hit him until after he tore my dress. Elma did not hit me. After the trouble I went over to Mrs. Harrison's." . . .

From her testimony and that of her son, Elma, and his wife, Fay, it is perfectly apparent they were withholding any evidence which they thought would incriminate appellant. They were doing all they could to shield him.

The said restaurant was on the same side of the street as the residence of Mrs. G. W. Harrison and these places were only about thirty or forty feet apart. Mrs. Harrison testified she knew all the parties; that on the day of this trouble between appellant and his wife she first saw Mrs. Needham that day when she was washing the blood off her face at a hydrant in her (Mrs. Harrison's) yard. There was blood on her arm and on her apron. "During the time that she was at her house I heard Mr. Needham cursing. He was around the restaurant somewhere. She had just come into the yard when I heard him over there. Yes, she made a statement to me. I asked her what was the matter. She said Oscar was over there tearing up the place. She said he threw a whisky bottle at her. I got her a rag to wash her face. She told me that they were eating dinner, she, Elma and Fay, when Oscar came in and took her crochet from her lap. Elma took it back and gave it to her. Oscar grabbed her and she did not know what he was going to do. She hit him with a knife. She said it was in self-defense. . . . I do not know what else she said, she said so many things about the way he had abused her. She told me that he had threatened her many times, and at this particular time he struck her. . . . She had a bruise on her wrist and the back of her hand was bruised. There were two places on her nose where something sharp

had struck her. Blood was dripping from two places on top of her nose. It seemed to me like something had hit a wall and flew back and hit her. Yes, there was blood on her apron and her clothing was torn. She said when he grabbed her he tore her dress. She said, 'I didn't know whether he was trying to tear my clothes off or kill me.'"

Abe Harrison, a son of Mrs. Harrison, testified that he saw said Mrs. Needham over at his mother's house on said occasion and heard her make a statement; that his mother and others were present at the time. "When Mrs. Oscar Needham came over there there was blood on her clothes and on a rag or handkerchief. She said Mr. Needham was drunk and throwing everything he could get his hands on at them and was trying to throw glasses at her. She had been there about fifteen minutes when I left. I do not know where Oscar Needham was at that time. Mr. Allen came before I left. Mrs. Oscar Needham was at our house when he came. She said he (Oscar) tried to tear her clothes off of her. I do not remember whether she said he hit her or not. Mrs. Needham came from the restaurant. . . . She said he was trying to tear her clothes off of her and she hit him with a knife."

Mr. Allen, an officer, testified that on said occasion he went to Needham's restaurant. Mrs. Needham was not there when he got there. He saw her over at Mrs. Harrison's. He swore: "She had a big swollen place on her arm and her nose was swollen and scratched and bruised and she had blood on her hands and clothing. I had a conversation with her over at Mrs. Harrison's. She said that Mr. Needham had hit her on the arm with a bottle or a glass. I don't know which. I don't know whether she knew or not. She had blood on her dress and her handkerchief was bloody. She showed me her arm. She said she would have to tell it like it was but she hated to. She said he was drunk and was taking in everything in the restaurant. She said he liked to have broken her arm. I then went and arrested Oscar Needham. When I got him he had a bottle of whisky. I made the complaint and got a warrant. I got the bottle the first time I saw him. It had blood on the bottle."

Appellant objected to that part of the testimony of Mrs. Harrison, Abe Harrison and Mr. Allen as to what Etta Needham told them. The court admitted said testimony as res gestae. He qualified and explained appellant's bills on the subject all substantially in the same way. We quote his explanation and qualification of the first bill on the subject. It is: "The part of the bill that shows that Mrs. Etta Needham said that the defendant was drunk was by agreement orally withdrawn from the jury, and they were instructed to disregard it.

"The balance of the bill which shows the statements made by Mrs. Etta Needham was admitted by the court as res gestae, for the reason that the record taken as a whole shows that they were made a very short time after the injuries were received, not over ten or fifteen minutes, that they were made while Mrs. Etta Needham was still bleeding

freely from the wounds, and was trying to wash the flowing blood from her face, such statements being in the opinion of the court clearly within the rule of res gestae."

The said testimony of the three witnesses objected to was clearly res gestae and admissible on the authority of Gillespie v. State, 80 Texas Crim. Rep., 432, 190 S. W. Rep., 146.

Appellant objected to this statement or argument by the county attorney to the jury: "It is impossible for us to find the best class of people as witnesses in criminal cases because they are not the kind of people who see and hear such things. And that is why the State has had to bring here 'him and his kind of cattle,'" referring to defendant and his wife and son and daughter-in-law.

The court explained and qualified this bill as follows: "When objection was made to the above argument the court promptly sustained the same, and by agreement of counsel for the defendant, orally instructed the jury to disregard said argument, and not consider it for any purpose. The court also in the presence of the jury reprimanded the county attorney making such argument, and told him that same was improper and that such argument was not permissible, and should not be indulged in."

Under the circumstances this bill presents no reversible error.

Appellant attempted to take other bills to some other claimed argument by the county attorney but the explanation of the court thereof is in effect a refusal to approve these bills. Hence they present no reversible error.

The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

#### October 31, 1917.

PRENDERGAST, JUDGE.—The only contention of appellant, in his motion for rehearing is, in substance, that the commission of the alleged offense can not be established by res gestae evidence alone. The res gestae of any transaction, which is the transaction itself speaking, testified to by witnesses, is regarded by all the authorities as a very high class of testimony. In this case this offense was not proven by res gestae statements alone. The physical facts testified to by some of the witnesses and the testimony of Mrs. Needham herself in connection with the res gestae statements proven were amply sufficient to prove the offense. The testimony is substantially recited in the original opinion to which there is no objection by appellant.

The motion is overruled.

*Overruled.*